Argued December 17, 1915, affirmed January 25, 1916.

# KIMBALL v. HORTICULTURAL FIRE RELIEF.

## (154 Pac. 578.)

**Appeal and Error—Scope of Review—Preservation of Objections and Exceptions.**

1. Where statements were admitted over objection and exception with the understanding that same would subsequently be connected in order to make the same material, which was not done, and defendant neglected to move to strike them from the record, on appeal no error could be imputed to the court in admitting the testimony.

**Appeal and Error—Amendment to Pleading is in the Discretion of the Court.**

2. The granting or denial of a motion to amend a pleading is a matter within the sound discretion of the trial court, and such ruling thereon will not be disturbed except in case of manifest abuse of sound judgment.

**Insurance—Actions—Amendment to Pleading Alleging Waiver.**

3. In an action to recover an alleged loss under a fire insurance policy, where the complaint failed to allege that insurer had waived a certain clause of the policy providing that no action thereon should be maintained unless commenced within 12 months next after the fire, it was not error for the court to allow an amendment so as to include such allegation of waiver.

**Insurance—Actions—Waiver by Estoppel—Sufficiency of Evidence to Establish Such.**

4. A fire insurance policy contained the condition that no officer of the company could waive its provisions except on certain conditions, the waiver to be attached to the policy. Plaintiff having sustained a loss and when proof was submitted the secretary of the company replied by letter that plaintiff would hear from them about the time he settled with another company, against which company an action was then pending. *Held*, that the letter from the secretary was incompetent to show waiver, yet was admissible to show a waiver by estoppel to allege laches of plaintiff in failing to comply with the terms of the policy as to making proof of loss and time in which to sue, for the reason that plaintiff might have construed the letter to mean that the company would abide by the result of the action then pending.

[As to estoppel of insurer to rely on limitations placed on agent's authority, see note in Ann. Cas. 1914A, 590.]

**Insurance—Action on Policy—Question of Estoppel for the Jury—Pleading.**

5. Where the complaint only alleged waiver of the conditions of the policy, the trial court was warranted in holding, as a matter of law, from a mere inspection of the language employed in the letter to plaintiff, that the averment of the complaint as amended in re-

spect to the waiver was adequate, from which an inference of an estoppel arose, and under the evidence the question of estoppel was properly submitted to the jury.

**Insurance—Admissibility of Evidence Explaining Failure to Sue—Estoppel.**

6. An estoppel always implies that a party has been misled to his prejudice, and it may arise without an intent to mislead or deceive. Testimony is admissible tending to prove such deception, so that no error was committed in receiving in evidence the letters written by the secretary of the company, upon which plaintiff relied in not bringing an action within the time required by the terms and conditions of the policy.

From Marion: PERCY R. KELLY, Judge.

Department 2.    Statement by MR. CHIEF JUSTICE MOORE.

This action was commenced December 27, 1913, by E. M. Kimball, against the Horticultural Fire Relief of Oregon, a corporation, and the Pacific Home Mutual Fire Insurance Company, a corporation, to recover the amount of an insurance policy by reason of the loss of quantities of grain, flour, bran, shorts and sacks by fire, which occurred April 21, 1911, and while the property was contained in the plaintiff's mill at Jordan, Oregon. A copy of the policy having printed thereon the provisions of Section 4666, L. O. L., and also a copy of a letter written by an agent of the insurer to the insured were made parts of the complaint, in which it was alleged that by such letter the insurer waived a clause of the policy, providing that no action thereon should be sustainable unless it was commenced within 12 months next after the fire.   A paragraph of the policy reads:

"No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions, no officer, agent or representative, shall be

deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.''

The complaint was demurred to on the ground that the action had not been commenced within the time limited, and that the initiatory pleading did not state facts sufficient to constitute a cause of action.   The demurrer having been overruled, an answer was filed denying the material averments of the complaint.   For a further defense it was alleged that the action had not been commenced within the time limited, and that no officer, agent or other representative of the defendants, or either of them, had waived any of the conditions of the policy.   For a second defense it was averred that the policy was rendered void by reason of the false sworn statement of the insured in respect to the quantity and value of the personal property which he asserts was destroyed, setting forth the particulars of the declared deception.

The allegations of new matter in the answer were controverted by the reply, and the cause, having been tried, resulted in a judgment for the sum demanded against the defendant, the Pacific Home Mutual Fire Insurance Company, and it appeals.       AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John Bayne.*

For respondent there was a brief and an oral argument by *Mr. William H. Trindle.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The court, over objection and exception, but with the promise that the testimony would subsequently be

connected, permitted the plaintiff, as a witness in his own behalf, to state that after the fire he left with an attorney at Albany, Oregon, a package of papers pertaining to the loss; that some time thereafter these papers were taken to Salem in this state and left with another attorney, where they remained several months, and then were delivered to the attorney who instituted this action. No testimony was offered tending to render such sworn statements material. The court and counsel evidently forgot the matter until after the cause was submitted. The defendant's counsel should have interposed a motion to strike out the testimony so objected to, but not having done so, no error, under the circumstances, can be imputed to the court.

2, 3. It is maintained that an error was committed in allowing the plaintiff's counsel to amend the complaint so as to allege a waiver by the defendant of the clause of the policy hereinbefore quoted. The granting or denial of a motion for leave to amend a pleading is a matter within the trial court's discretion which will not be disturbed, except in case of manifest abuse of sound judgment, which is not apparent in this instance.

4. The plaintiff having introduced his evidence in chief and rested, the action was dismissed as to the defendant the Horticultural Fire Relief of Oregon, which corporation it was alleged in the complaint had succeeded to all the interests and assumed all the liabilities of the defendant the Pacific Home Mutual Fire Insurance Company, but the court refused to grant a judgment of nonsuit as to it. When all the testimony had been received and the cause submitted, the court denied a motion to direct a verdict in favor of the Pacific Home Mutual Fire Insurance Company, and it is contended that errors were thereby committed. The latter application will alone be considered, since it necessarily includes the former motion.

Testimony was received at the trial tending to show that the Pacific Home Mutual Fire Insurance Company, which, for brevity, will be called the defendant, is a corporation engaged in insuring property against loss or damage by fire, and on October 4, 1910, in consideration of the payment of the required premium, issued to the plaintiff, E. M. Kimball, a policy of insurance, whereby it undertook for the term of one year to indemnify him, in the sum of $500, against such loss of or damage to his personal property, hereinbefore described, while contained within the place specified; that on April 21, 1911, and while the plaintiff remained the owner of such property, which was then contained in his mill, that building and all its contents were destroyed by fire, and the loss so sustained did not result from any of the causes excepted in the policy; that the value of the grain, etc., was $747, which was the extent of the plaintiff's damages by reason of the total destruction of such property; that he immediately notified the defendant of such injury, and seven days after the fire he made and submitted to the insurer due proof of his loss as requested; that upon the receipt thereof the defendant, by its proper agents, made a full and complete investigation of the fire and ascertained and estimated the loss, occasioned by the destruction of such grain, etc., to have been the sum so stated. It further appears from the testimony that at the time of the fire the plaintiff, in addition to the indemnity herein referred to, also had valid insurance policies on his mill, that had been issued, one by the Horticultural Fire Relief of Oregon in the sum of $1,000, and another by the Lower Columbia Fire Relief Association for $2,000. A letter, written by an agent of the latter insurance company to a representative of the former, was received in evidence, over objection and exception, and is as follows:

"Woodburn, Oregon, May 15, 1911.
"M. R. Markam, Forest Grove, Ore.

"Dear Sir: Yours in regard to burning of Kimball mill at Jordan, rec'd. I did not adjust the loss there. S. A. Dawson did that and made such a report that our president is looking further into it. If there was much stock on hand when the fire occurred of what flouring mills are supposed to keep it would surely have showed afterward. Dawson was not apprised of any insurance on stock until after he had been there.

"Sincerely yours,
"J. VOORHEES, Secy."

Another letter, written by the president of the Lower Columbia Fire Relief Association to an agent of the Horticultural Fire Relief was also received in evidence, over objection and exception, and reads:

"Portland, Oregon, May 26, 1911.
"Mr. M. R. Markam.

"Dear Sir; At a full meeting of our board of directors we all concurred in not paying E. M. Kimball for his loss.      Yours respectfully,
"A. F. MILLER."

Immediately thereafter the plaintiff received notice from the agents of the Lower Columbia Fire Relief Association, denying any liability on its policy by reason of the destruction of the mill. Upon the receipt of such information the plaintiff wrote a letter, of which the following is a copy:

"Jordan Flouring Mills,
"E. M. Kimball, Prop.
"Scio, Ore.

"May 27/11.
"Pacific Home Fire Ins. Co., Forest Grove, Ore.

"Gentlemen: Will you please inform me why you have not settled my claim for Ins. and what you intend to do about it.

"Hoping to hear from you soon, I remain,
"Yours respy.,
"E. M. KIMBALL."

In response to such inquiry he received a letter which reads:

"Pacific Home Mutual Fire Insurance Company,
Forest Grove, Oregon.

"June 5th, 1911.

"Mr. E. M. Kimball, Scio, Ore.

"Dear Sir: We have your letter of May 27th, asking why we have not settled your claim for loss and what we intend to do about it.   We wish to say in reply that we got a proof as to loss through the Horticultural Company of Salem, and it was received by this office in an unfinished condition, and as we were not able at that time to get the desired information through this source, we took the matter up with the Lower Columbia Fire Relief Association, who were also interested at this place, and since receiving the report from this association, we have not had a directors' meeting to take any action in the matter.   Would say, therefore, that we will take the matter up for settlement at our next meeting and you will probably hear from us about the time you have settlement with the Grange Association.

"Yours respectfully,

"F. A. WATROUS, Sec'y."

The "Grange Association" thus mentioned was intended to mean the defendant next hereinafter named, against which a suit was instituted on its policy, resulting in a final decree in plaintiff's favor October 21, 1913: *Kimball* v. *Lower Columbia Fire Relief Assn. of Oregon,* 67 Or. 249 (135 Pac. 877).   The testimony further tends to show that a notice of the decree so obtained was given to the defendant and a demand made upon it to pay the plaintiff the sum of $500 and interest, but upon a refusal to comply with such request this action was instituted.   The plaintiff, referring to the letter which he received June 5, 1911, from F. A. Watrous, testified, as to the alleged waiver set forth as an amendment to the complaint, to the effect that by such com-

munication he was induced and persuaded to believe the defendant would wait the result of the suit which he intended to bring against the Lower Columbia Fire Relief Association of Oregon—would abide the decree in the event of a recovery therein, and pay him the amount of its policy—and that, believing such representations and relying thereon, he allowed a period of more than 12 months to elapse from the time of the fire before bringing this action, which he would not have done except for such letter.

Based upon the evidence and testimony thus detailed, the motion for a directed verdict presents the question as to whether or not the letter of F. A. Watrous is sufficient to constitute an estoppel against the defendant. As to the conduct of its secretary to raise a bar or impediment by his letter against his principal, in discussing a similar subject, Mr. Justice BOGGS, in *Dwelling House Ins. Co.* v. *Dowdall,* 55 Ill. App. 622, 627, observes:

"The stipulation in the policy that no agent or other representative of the company shall have power to waive any provisions or condition of the policy may be effective as against an alleged waiver by agreement or contract with an agent or representative, but has no application when the law declares a waiver by estoppel, because of the acts of the company through its agent or representative. Such estoppels do not rest upon the power, or lack of power, of the agent to change the provisions of the policy or waive any of its agreements, but arise in law, because of the acts of the company through its agent, acting in the scope of his apparent power as its representative."

In *Webster* v. *State Mutual Fire Ins. Co.,* 81 Vt. 75, 80 (69 Atl. 319, 320), Mr. Justice POWERS, in distinguishing between a relinquishment of a known right and a preclusion which in law prevents a party from

alleging or denying a fact in consequence of his own previous act, averment, or denial to the contrary, says:

"The terms 'waiver' and 'estoppel,' as applied to the law of insurance contracts, are usually used as meaning the same thing, and they are so used in many of our own cases. Courts have frequently asserted that they are convertible terms. * * A closer inspection of the matter, however, convinces us that they are essentially different. A waiver involves the act or conduct of one of the parties to the contract only. An estoppel involves the act or conduct of both parties to the contract. * * A waiver is the intentional relinquishment of a known right. * * It involves both knowledge and intent. An estoppel may arise where there is no intent to mislead. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position. * * An estoppel always involves this element. A waiver may amount to an estoppel, but not necessarily so. Though the conduct of the insurer may not have misled the insured to his prejudice, yet if with full knowledge, he intentionally elects not to take advantage of the forfeiture, the law, in its zeal to avert the forfeiture, will hold the insurer irrevocably bound as by an election to treat the contract as if no cause of forfeiture had occurred. And this election may be either express or implied."

In *Insurance Co.* v. *Eggleston,* 96 U. S. 572, 577 (24 L. Ed. 841), in discussing this subject, Mr. Justice BRADLEY asserts:

"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture."

Mr. Watrous, as secretary, was unquestionably a general agent of the defendant, and clothed with suffi-

cient power to bind it by the statements contained in his letter, and, assuming, without deciding, the latter was not competent to prove a technical waiver by agreement, because not indorsed on nor attached to the policy, the writing was nevertheless properly received in evidence for the purpose of showing a situation where the law will declare a waiver by estoppel.

5. It will be remembered that in response to the plaintiff's letter of inquiry of May 27, 1911, as to why the defendant had not settled his claim for insurance and what the company intended to do about it, Mr. Watrous, nine days thereafter, wrote him in part as follows:

"Would say, therefore, that we will take the matter up for settlement at our next meeting and you will probably hear from us about the time you have settlement with the Grange Association."

This letter was written at a time when the defendant knew the insurance company last mentioned did not intend to pay the plaintiff for his loss under its policy, as is evidenced by the letter of May 26, 1911, written by A. F. Miller to M. R. Markam. From a mere inspection of the language employed by F. A. Watrous in his letter to the plaintiff, the trial court was warranted in holding, as a matter of law, that the averment of the complaint as amended in respect to the waiver was adequate from which an inference of an estoppel necessarily arose, and as the evidence and testimony received tended to establish such allegation, the question under proper instructions was properly submitted to the jury to find as to whether or not the facts so set forth were substantiated.

6. An estoppel always implies a party has been misled to his prejudice, or into an altered position which he would not have taken except for representations

relied upon; and, as the estoppel may arise without an intent to guide astray, upon principle, testimony tending to prove such a deception must be admissible, and, this being so, no error was committed in receiving in evidence the letters to the introduction of which exceptions were taken.

No error was committed in refusing to direct the jury to find a verdict for the defendant.

The question of the plaintiff's alleged false swearing with respect to his proof of loss was submitted, under proper instructions, to the jury, which found in his favor, from which verdict it must be concluded such averment was disproved.

Other alleged errors are assigned. They are not deemed important, and will not be considered. The judgment should be affirmed, and it is so ordered.

AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE HARRIS and MR. JUSTICE McBRIDE concur.

---

'Argued January 20, affirmed February 1, 1916.