Argued and submitted February 18, affirmed April 8, reconsideration denied May 22, petition for review denied June 16, 1987 (303 Or 534)

DONOHOE,
*Appellant,*

*v.*

MID-VALLEY GLASS CO. et al,
*Respondents.*

(16-84-09895; CA A40016)

735 P2d 11

Larry J. Anderson, Eugene, argued the cause and filed the brief for appellant.

Timothy F. Brewer, Eugene, argued the cause for respondent Mid-Valley Glass Co. With him on the brief were Philip R. McConville and Flinn, Brown & Roseta, Eugene.

Timothy J. Harold, Springfield, waived appearance for respondent Mark C. Brundage.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff appeals from a judgment dismissing her negligence and Unlawful Trade Practices Act (UTPA) action against defendants Mid-Valley Glass Co. and Brundage on the ground that the action is barred by the applicable statutes of limitations.[1] ORS 12.110(1); ORS 646.638(5). Plaintiff argues that the trial court erred by allowing defendants' motions to dismiss, because her fourth amended complaint alleged facts which would permit a finding that defendants were estopped to assert the limitations bar. We disagree and affirm.

Plaintiff alleged that, in constructing a house for her in 1981, Brundage installed a glass greenhouse roof which he had purchased from Mid-Valley. After leakage problems developed during the winter of 1981-82, plaintiff contacted defendants, and both "agreed to correct the problem the following spring." In May, 1982, and, again, in May, 1983, defendants attempted unsuccessfully to rectify the problems with the roof. Plaintiff alleges that defendants were negligent in connection with the original materials and installation and in connection with the 1982 and 1983 repair efforts. She also alleges that Mid-Valley committed an unlawful trade practice by misrepresenting the quality and characteristics of the roof which it provided. *See* ORS 646.608(1)(e). Plaintiff brought this action in December, 1984, well after the limitation period on both of her claims had run. She bases her estoppel argument in part on this allegation:

> "That after the corrective work done by each Defendant on or about May of 1982 and on or about May of 1983, each Defendant advised the Plaintiff that said leaking situation had been corrected and would not be a problem. The Plaintiff believed and relied upon the representations of the said Defendants. Plaintiff did not discover that said representations were false until the following winters when said glass greenhouse type roof would leak."

The Supreme Court's and our decisions have recognized that, under some circumstances, a defendant can be equitably estopped by verbal representations or conduct from invoking a statute of limitations defense. *See, e.g., Lyden v.*

---

[1] Plaintiff does not appeal from the judgment for defendant Lawless. The term "defendants" in this opinion refers to respondents.

*Goldberg,* 260 Or 301, 490 P2d 181 (1971); *Johnson v. Kentner,* 71 Or App 61, 691 P2d 499 (1984), *rev den* 299 Or 31 (1985). Those cases have more often arisen in the settlement negotiation context than any other. The governing principles were summarized in *Johnson v. Kentner, supra:*

"The essential elements of estoppel are set out in *Bennett v. City of Salem[, et al.],* 192 Or 531, 541, 235 P2d 772 (1951):

" 'To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.'

"*See also Bash v. Fir Grove Cemeteries, Co.,* 282 Or 677, 687, 581 P2d 75 (1978); *Hess v. Seeger,* 55 Or App 746, 760-61, 641 P2d 23, *rev den* 293 Or 103 (1982). Although those elements suggest that proof of fraudulent intent is necessary, cases decided after *Bennett* have established that such proof is not required. *See Schmeck v. Bogatay,* 259 Or 188, 197, 485 P2d 1095 (1971); *Hess v. Seeger, supra,* 55 Or App at 761-62. There must, however, be a justifiable reliance by the party seeking to invoke estoppel, and that reliance must be reasonable. *Bash v. Fir Grove Cemeteries, Co., supra,* 282 Or at 687; *Hess v. Seeger, supra,* 55 Or App at 761.

"[T]he question may be narrowed to whether the representations to the attorney as a matter of law were sufficient to amount to an affirmative inducement to the attorney to forebear from filing an action or to lull him into disregarding the filing deadline. * * *

"* * * We find nothing in the representations made by the adjuster * * * that was a promise to settle or that told the attorney not to file suit or that suggested that a lawsuit would not be necessary. *Cf. Malaer v. Flying Lion, Inc.,* 65 Or App 154, 159, 670 P2d 214 (1983)(adjuster's statements he would 'take care of the claim' and 'you don't need to worry about it' could be interpreted as a promise to settle and pay damages). The representations only indicate a willingness on the part of the adjuster to negotiate further outside the arena of the courtroom. Mere pendency of negotiations does not give rise to an estoppel. *See Lyden v. Goldberg,* 260 Or 301, 305-06, 490 P2d 181 (1971)." 71 Or App at 72-73.

No Oregon decision known to the parties or us has

discussed whether or how that estoppel doctrine applies to a defendant's efforts to repair the damage caused by his negligence or to a defendant's representations that he would undertake or has succeeded at such efforts. The decisions that the parties cite from other jurisdictions have reached different results, although those differences may be due in part to factual variations. *See Axia Inc. v. I. C. Harbour Const. Co.,* 501 NE2d 1339, 1345-47, 150 Ill App 3d 645 (1986), and cases there cited. We need not consider whether, under Oregon law, estoppel to raise a limitations defense can ever be based on a defendant's remedial efforts or attendant representations, because under the principles expressed in the Oregon cases we have discussed plaintiff's allegations cannot support a finding of estoppel.

Plaintiff alleges nothing from which it can be inferred that defendants' attempts to repair the leakage problem, their before-the-fact representations that they would do so or their after-the-fact representations that they had succeeded were meant as an affirmative inducement for plaintiff to desist from litigation or had anything to do with the prospect of litigation.[2] Indeed, the pleading supports the contrary inference that defendants agreed and attempted to prevent *further* damage after some actionable damage had already occurred. Unlike *Lyden v. Goldberg, supra, Johnson v. Kentner, supra,* and similar cases, where the defendants' efforts were putatively directed at forestalling litigation to recover damages for past injuries, the allegations about defendants' curative efforts here have no relationship to damages which had accrued. Moreover, plaintiff's allegations show on their face that she could not reasonably have relied on either the repairs or defendants' representations about them in not bringing the action. She knew by the winter of 1982-83 that the May, 1982, attempts at repair had failed. Although the limitation period for the original negligence expired in the meantime, she awaited another spring's remedial efforts and

---

[2] We emphasize that plaintiff does not claim damages for the after-the-fact representations, but contends only that those representations form part of the basis for estopping defendants from asserting the limitations bar to the negligence and the UTPA claims. The latter claim is based on Mid-Valley's alleged representations about the characteristics and quality of the roof as provided, not its representations about the success of the remedial attempts.

another winter's storms before she sued. Plaintiff's arguments demonstrate no error in the trial court's ruling.

Affirmed.